## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

SABA TSEGAYE SOLOMON, et al.,    )
    )
           Plaintiffs,    )
    )
v.    )   Docket No. 2:23-cv-00219-NT
    )
ANTONY J. BLINKEN, et al.,    )
    )
           Defendants.    )

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Before me is the Defendants' motion to dismiss the Plaintiffs' Amended
Complaint (the "**Amended Complaint**"). Defs.' Mot. to Dismiss (ECF No. 22). For
the reasons stated below, the motion is **GRANTED**.

## BACKGROUND[1]

On May 26, 2023, Plaintiffs Saba Tsegaye Solomon ("**Saba**"), Tsegaye Solomon
Ghirmay, and Daniel McIntyre filed a Complaint against the U.S. Secretary of State,
Antony Blinken. Compl. (ECF No. 1). McIntyre is Saba's attorney and a member of
the Maine bar, but he listed himself as a *pro se* plaintiff and signed the Complaint as

---

[1]    The facts below are drawn from the Plaintiff's allegations, which I take as true for the purpose
of deciding a motion to dismiss. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). I also may consider
"facts susceptible to judicial notice" and "concessions in plaintiff[s'] response to the motion to dismiss."
*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012) (internal quotation
marks omitted). Both parties attached additional documents to their briefs. "In ruling on a motion to
dismiss for failure to state a claim, 'a court ordinarily may only consider facts alleged in the complaint
and exhibits attached thereto, or else convert the motion into one for summary judgment.' " *Douglas
v. Hirshon*, 63 F.4th 49, 57 (1st Cir. 2023). "If the district court chooses to ignore the supplementary
materials and determines the motion under the Rule 12(b)(6) standard, no conversion occurs." *Garita
Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir. 1992). As explained later, outside-
the-pleadings facts and documents are treated differently on a motion to dismiss under Rule 12(b)(1).

such. Compl. ¶ 4. The third original plaintiff, Tsegaye Solomon Ghirmay, is Saba's father, and he also signed the Complaint as a *pro se* party. Compl. ¶ 3. The Plaintiffs alleged jurisdiction under 28 U.S.C. § 1331 and through 5 U.S.C. § 702 because they did not seek monetary relief. Compl. ¶ 1. What the Plaintiffs did seek was an interview appointment at the U.S. Embassy in Addis Ababa, Ethiopia, so that a decision could be made on Saba's right to certification of her U.S. citizenship. Compl. ¶ 24. The Plaintiffs further requested that, if Saba were found to be entitled to such certification, Embassy officials issue her a Consular Report of Birth Abroad ("**CRBA**") and a U.S. passport. Compl. ¶¶ 29–30.

Along with the Complaint, the Plaintiffs filed a motion for a preliminary injunction seeking the same relief. Mot. for Prelim. Inj. (ECF No. 3). This was soon followed by a motion from McIntyre for an expedited hearing and a motion "as to scheduling issues." Mot. Expedited Hr'g (ECF No. 7); Mot. as to Scheduling Issues (ECF No. 9). On June 14, 2023, I held a conference of counsel to discuss the issues raised in the Plaintiffs' motions, and the parties agreed to try to figure out what, if anything, was holding up Saba's application and to update me. Minute Entry (ECF No. 14). Over the next few weeks, the parties tried to work through the issues that the Plaintiffs were having with Saba's application (like electronic filing difficulties), and she ultimately received an Embassy interview date of June 27, 2023. *See* Status Reports (ECF Nos. 16–17, 19). Then, on July 22, 2023, the Plaintiffs filed a status update, in which they reported that Saba had received her U.S. passport and conceded that "[t]his event calls into question the necessity for the preliminary relief

2

she had sought and so [Saba] . . . withdr[ew] the motion for preliminary relief." Pls.' 7/22 Submission as to Case Status ("**Pls.' Status Report**") (ECF No. 20).

Meanwhile, on July 14, 2023, the Plaintiffs filed an Amended Complaint. First Am. Compl. ("**Am. Compl.**") (ECF No. 18). The Amended Complaint includes Saba's initial claim relating to the issuance of her CRBA (Count I), but it also adds Saba's grandfather and three John Does as plaintiffs. Am. Compl. ¶¶ 4, 6–8, 13–30. And it includes three additional claims: claims relating to delays in processing family reunification and spousal visas for Ethiopian nationals related to Saba's grandfather and to the anonymous Plaintiffs (Count II); a claim that McIntyre is being denied due process because the Embassy has restricted his ability to pursue his profession as an attorney (Count III); and a claim that McIntyre's First Amendment right to free speech and to petition is being violated because the Embassy has not permitted him to distribute handbills to Embassy employees (Count IV). Am. Compl. ¶¶ 31–59.

The Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Defs.' Mot. to Dismiss ("**Defs.' Mot.**") (ECF No. 22). Additionally, on December 4, 2023, the Defendants filed a third status report based on new factual developments that McIntyre revealed in an email he sent to the Court and the Defendants. Status Report (ECF No. 25). McIntyre's email reads, in part:

> I am in Addis because some of the visa applicants have been scheduled for their interviews and I am hoping the Embassy will relent and allow me to attend with them as none of them speak English and the embassy does not provide written explanation of what is happening in their

native language. I am also meeting with other potential clients although it is a tough sell when the embassy forbids the employme[n]t of an attorney.

Status Report, Ex. A. – Email from Daniel McIntyre to Court (Nov. 28, 2023, 5:02 a.m. EST) ("**McIntyre Email**") (ECF No. 25-1).

## LEGAL STANDARDS

### I.      Rule 12(b)(1)

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of BTEA v. Sec'y of Lab.*, 62 F.3d 37, 39 (1st Cir. 1995). In reviewing a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), I "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996). In addition, I may consider whatever evidence the parties have submitted. *Id.* Unlike in a 12(b)(6) motion, "[t]he attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 [summary judgment] motion." *Gonzalez v. United States,* 284 F.3d 281, 288 (1st Cir. 2002). Instead, "[t]he moving party may use affidavits and other matter to support the motion, while the plaintiff may establish the existence of subject matter jurisdiction through extrapleading material." *Marcoux v. Szwed*, No. 2:15-cv-93-NT, 2015 WL 7705790, at *1 (D. Me. Nov. 27, 2015), *R. & R. adopted,* 2016 WL 74407 (D. Me. Jan. 6, 2016). "If a Rule 12(b)(1) motion contests factual allegations of the complaint, [I] must engage in judicial factfinding to resolve the merits of the

4

jurisdictional claim." *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). In such a review, the plaintiffs' allegations "are entitled to no presumptive weight." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). The Plaintiff bears the burden of showing that subject matter jurisdiction exists. *See Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016).

## II.    Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), I must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 61 (1st Cir. 2020). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This evaluation requires me to "perform a two-step analysis." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). First, I "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). Second, I "must determine whether the 'factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 224 (quoting *Iqbal*, 556 U.S. at 678). Although "detailed factual

allegations" are not required, Rule 8 (the pleading standard) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## III.   Review of *Pro Se* Pleadings

Although generally I must construe the pleadings of a *pro se* plaintiff liberally, courts draw a distinction between *pro se* attorneys and other *pro se* parties. *See, e.g., Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023) (explaining that the logic behind "afford[ing] leeway to pro se parties, who appear without counsel and without the benefit of sophisticated representation," does not apply to practicing attorneys); *Andrews v. Columbia Gas Transmission Corp.,* 544 F.3d 618, 633 (6th Cir. 2008) (finding district court did not abuse its discretion by denying special consideration to *pro se* practicing attorneys); *Comm. on the Conduct of Att'ys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007) (declining to extend liberal construction to a licensed attorney); *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys such as [plaintiff] typically cannot claim the special consideration which the courts customarily grant to *pro se* parties." (internal quotations omitted)); *Godlove v. Bamberger, Foreman, Oswald, & Hahn,* 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of *pro se* applicants gently, but a *pro se* lawyer is entitled to no special consideration.").

## DISCUSSION

## I.   Count I – Saba Tsegaye Solomon's Claims

Count I of the Amended Complaint, which is titled "CRBA for Saba," sought a Consular Report of Birth Abroad for Saba Tsegaye Solomon so she could come to the

United States, "the land of which she is a citizen," and meet her father. Am. Compl. ¶¶ 2, 13–30. To use the Plaintiffs' words, the lawsuit asks the U.S. Embassy in Ethiopia to "certify her citizenship and issue her the passport to which the law entitle[s] her." Resp. to Defs.' Mot. to Dismiss ("**Pls.' Opp'n**") 1 (ECF No. 23). But, since filing the Amended Complaint, Saba has received a U.S. passport. Pls.' Status Report. To use the Plaintiffs' words again, "Saba got her papers and is here now." Pls.' Opp'n 3. That renders Count I moot.

"[A] suit becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.' " *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191 (1st Cir. 2022) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). A party lacks a legally cognizable interest in the outcome of a case "if the court is not capable of providing any relief which will redress the alleged injury." *Id.* (internal quotations omitted). "[I]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52–53 (1st Cir. 2013) (internal quotations omitted). "This is true 'no matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit.' " *Harris*, 43 F.4th at 191–92 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Here, the Plaintiffs' claim for injunctive relief relating to the CRBA application process is moot because Saba received the relief sought—certification of her U.S. citizenship and the issuance of a passport. "Thus, there is simply 'no ongoing conduct

to enjoin.' " *Id.* at 192 (quoting *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021)). And Count I is not saved by the Plaintiffs' closing request "[t]hat the Embassy make Saba whole for the injury it caused by providing any medical, psychological or educational services necessary to make her whole." Am. Compl., Req. for Relief F. The Amended Complaint contains no allegations that Saba was injured in a way that would support this opaque claim for damages.

The Plaintiffs argue that this request is not one for damages—which would be barred by sovereign immunity[2]—but rather one for equitable relief in the form of ordered monitoring. *See* Pls.' Opp'n 4 ("This court wields equitable power sufficient to make her whole by ordering remedial interventions that address these injuries."); Am. Compl. ¶ 1 (alleging that "this action . . . does not seek monetary relief"). But despite the Plaintiffs' characterization, their request to make Saba whole is in effect a claim for compensatory damages. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (holding that parties who requested that victims be made whole "in fact seek . . . nothing other than compensatory *damages*"); *Giguere v. Port Res., Inc.*, No. 2:16-cv-58-NT, 2018 WL 5268600, at *3 (D. Me. Oct. 23, 2018), *aff'd,* 927 F.3d 43 (1st Cir.

---

[2]     Sovereign immunity is also "jurisdictional in nature" and, "[a]bsent a waiver, [it] shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Under the Administrative Procedure Act ("**APA**"), "sovereign immunity is abolished only in actions for specific relief (injunction, declaratory judgment, mandatory relief, etc.)." *Bowen v. Massachusetts*, 487 U.S. 879, 897 n.27 (1988) (quoting from the legislative history of 5 U.S.C. § 702); *see* 5 U.S.C. § 702 (providing a right of judicial review in federal court for cases "seeking relief *other than* money damages" (emphasis added)). Although the Plaintiffs contend that the Amended Complaint "states no APA claim at all," they also argue that "[t]he APA is relevant only in so far as it waives sovereign immunity." Resp. to Defs.' Mot. to Dismiss ("**Pls.' Opp'n**") 3 (ECF No. 23). I question whether the Plaintiffs can have it both ways on the applicability of the APA, but in any event all parties agree that the APA matters in my determination as to whether the government's sovereign immunity has been waived.

2019) ("Compensatory damages—sometimes referred to as remedial damages—are awarded to compensate a plaintiff for injury legally attributable to the defendant; they seek to make a plaintiff whole." (internal quotations omitted)). The medical-monitoring-claim case cited by the Plaintiffs, *Giovanni v. United States Department of Navy*, 906 F.3d 94 (3d Cir. 2018), does not help them. *Giovanni* states that whether a monitoring claim is a request for money damages or for equitable relief "requires a case-specific analysis." 906 F.3d at 119. And it further explains that "if plaintiffs seek relief that is a disguised request for compensatory damages, then the medical monitoring claim can only be characterized as a claim for monetary damages." *Id.* (internal quotations omitted); *see Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."). Saba's claim here—that she be made whole for the injury caused by the Embassy—is just the type of "disguised request for compensatory damages" that *Giovanni* envisioned.

Because the Plaintiffs' claims regarding Saba are either moot (the requested injunctive relief) or barred by sovereign immunity (the requested damages in the form of services to make Saba whole), Count I is dismissed.

## II.   Count II – Claims of Solomon Ghirmay Teklu and Anonymous Family

Having obtained the Saba-related relief sought in their original Complaint (and in Count I of the Amended Complaint), the Plaintiffs now bring entirely new claims on behalf of new parties. Count II alleges that the Defendants are violating the constitutional rights of three named Ethiopian nationals, Mearu and Mebrahtu Solomon Ghirmay and an anonymous woman, who are waiting for interviews for their

9

family reunification visa applications and are being denied due process. Am. Compl. ¶¶ 31–48. But Count II suffers from two fatal infirmities.

First, on November 28, 2023, Plaintiff McIntyre informed the Court via email that "some of the visa applicants have been scheduled for their interviews." *See* McIntyre Email. That renders moot the injunctive claims that those Plaintiffs brought. *Harris*, 43 F.4th at 192 ("Where . . . challenged measures no longer adversely affect any plaintiff's primary conduct, injunctive relief is unavailable and the attendant claims become moot." (internal quotations omitted)).

Second, even if not all of the Count II Plaintiffs have obtained scheduled interviews, their claims still fail for lack of jurisdiction. For me to have jurisdiction, the claims need to be ripe for judicial review. The Defendants argue that the Plaintiffs' claims in Count II are not ripe because there are annual limits on how many family-sponsored visas are made available and there is a "priority date" numbering system to set the order in which applicants are considered. According to the Defendants, the lack of an available visa number renders the Plaintiffs' claims unripe. Defs.' Mot. 8–9. The Plaintiffs do not respond to the ripeness argument.[3]

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

---

[3]    Instead, they contend that they are asking me "to equalize the processing of family and non-immigrant visas," and they suggest that I "could order that the visa section work on Friday afternoons until delays are reasonable." Pls.' Opp'n 5. I decline both invitations. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 544 (1978) (noting that it is a "very basic tenet of administrative law that agencies should be free to fashion their own rules of procedure"); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) ("It is settled that the judiciary will not interfere with the visa-issuing process.").

disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967)). "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* at 808 (citing *Abbott Labs.*, 387 U.S. at 149).

Here, the Defendants put forward evidence that reflects that Plaintiff Tsegaye Solomon Ghirmay's children have October 17, 2018 priority dates and that visa numbers were not available to them when they filed the Amended Complaint. *See* Decl. of Rachel Hines (ECF No. 22-1); Visa Bulletin for August 2023, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-august-2023.html.[4] Therefore, his claims are not ripe. As for the three anonymous Plaintiffs, their claims relate to their mother/wife, an Ethiopian national whose visa case was processed "and ready for an interview since April of 2022." Am Compl. ¶¶ 44–45. Accordingly, it appears that this visa applicant is even further down the waiting list with an April 2022 priority date, meaning the John Doe

---

[4]    The Court takes judicial notice of the publicly available information contained on the various U.S. Department of State websites because the authenticity of the information found there is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b)(2).

Plaintiffs' claims are likewise not ripe. Because all of the Count II claims are either moot or unripe, Count II is dismissed for lack of subject matter jurisdiction.[5]

Finally, I must mention the way in which the Count II claims were brought. The Plaintiffs originally filed this case seeking relief relating to one two-year-old's U.S. citizenship documentation. But once that relief was achieved through the actions of the Embassy, rather than file a voluntary dismissal of the now-moot claims, McIntyre filed an amended complaint to add four more plaintiffs and additional claims about how the Embassy in Addis Ababa operates. Unlike Saba, who was seeking a U.S. passport, the claims of the new Plaintiffs concern attempts to get family-sponsored immigrant visas for Ethiopian nationals to come to the United States. As the Plaintiffs well know, this is an entirely different process. Yet—as the Defendants aptly put it in their Motion—the "Plaintiffs improperly ushered new parties with unrelated claims through the door the Complaint once opened." Defs.' Mot. 2. The Plaintiffs cannot use Saba's mooted claim to ask the Court to address an ever-evolving situation with endless new parties who take issue with the way the U.S. Embassy in Addis Ababa conducts its business. The proper way to bring new

---

[5] Because I conclude that the Plaintiffs' claims are not ripe, I do not address the Defendants' argument that I lack jurisdiction to compel agency action under the APA because the Plaintiffs have not identified a clear, non-discretionary duty for the Defendants to schedule any particular noncitizens for immigrant visa interviews or to adjudicate any specific visa applications. The fact that "no APA mandatory duty exists" here supports "a presumption of non-reviewability" of the agency's actions here. *See Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv.*, 674 F.3d 97, 101 (1st Cir. 2012) ("As the Supreme Court has 'repeated time and again, an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities.' " (quoting *Massachusetts v. EPA,* 549 U.S. 497, 527 (2007))).

claims on behalf of new plaintiffs is to open a new civil case. That is what the Federal Rules of Civil Procedure contemplate and what this Court expects.

## III.    Count III – Attorney McIntyre's Due Process Claim

Count III of the Amended Complaint, titled "Restrictions on Daniel McIntyre's Ability to Pursue his Profession," asserts a claim that Attorney McIntyre has been denied due process because he "is unable to accept requests to employ his services in the processes before the Embassy" and "has thus been put out from his livelihood." Am. Compl. ¶ 53.

Count III (and Count IV) prompt a fundamental question: is McIntyre a party in this case or is he an attorney? His filings suggest that he is trying to have it both ways, acting as a *pro se* party with claims of his own while simultaneously representing the other Plaintiffs in the suit (despite those other Plaintiffs ostensibly proceeding *pro se* themselves). But, for several reasons, I am concerned about Attorney McIntyre assuming such a dual role in this action.

"In all courts of the United States the parties may plead and conduct their own cases personally *or* by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). Thus, "[b]y law an individual may appear in federal courts only pro se or through legal counsel." *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (citing 28 U.S.C. § 1654). This Court, by local rule, has adopted the Maine Rules of Professional Conduct as its standard. *See* D. Me. Loc. R. 83.3(e)(1). Rule 3.7 of the Maine Rules of Professional Conduct addresses the issue of "lawyer as witness" and provides that, "[a] lawyer shall not act as advocate at a tribunal in which the lawyer

is likely to be a necessary witness."[6] M.R. Prof. Conduct 3.7(a). Here, to prove Counts III and IV, McIntyre will necessarily have to act as witness in this Court. Indeed he already has testified in this Court because he submitted, pursuant to 28 U.S.C. § 1746, his declaration recounting his involvement with Saba's mother's efforts to obtain Saba's certification and passport. *See* Decl. of Daniel McIntyre ("**McIntyre Decl.**") (ECF No. 23-1).

I also have concerns about Attorney McIntyre's compliance with Rule 11 of the Federal Rules of Civil Procedure. Rule 11 requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented" and, by presenting such a signed document to the Court, the submitter—whether an attorney or an unrepresented party—is making certain certifications. *See* Fed. R. Civ. P. 11. McIntyre's presentation of himself as merely one of many *pro se* litigants, rather than their counsel, is troubling. He is undoubtedly acting as an attorney for the other plaintiffs—whether he always admits this or not. *See* Am. Compl. ¶¶ 28, 30, 50; Compl. ¶¶ 4, 20, 22, 25; McIntyre Decl. 1–2. That makes his dual status as both attorney and plaintiff in this action problematic. As the First Circuit has cautioned:

---

[6]     Unless "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." M.R. Prof. Conduct 3.7(a). None of those exceptions appear relevant here.

     For additional commentary on the rule against an attorney serving as a witness, see Restatement (Third) of the Law Governing Lawyers § 108, Comment (d) (2000). "The tribunal may order separate trials where joinder of the pro se lawyer-litigant with other parties would substantially prejudice a co-party or adverse party. When a lawyer appears as the advocate for a class and claims to be the party representative of the class as well, a tribunal may refuse to permit the litigation to proceed in that form."

> What we fear is that in some cases actual members of the bar represent petitioners, informally or otherwise, and prepare briefs for them which the assisting lawyers do not sign, and thus escape the obligation imposed on members of the bar, typified by F. R. Civ. P. 11, but which exists in all cases, criminal as well as civil, of representing to the court that there is good ground to support the assertions made. We cannot approve of such a practice. If a brief is prepared in any substantial part by a member of the bar, it must be signed by him.

*Ellis v. State of Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971). Attorney McIntyre has failed to comply with this obligation. He did not sign the Amended Complaint and he did not sign the Plaintiffs' Response to Defendants' Motion to Dismiss ("**Opposition**").[7] Perhaps tellingly, McIntyre does provide an electronic signature on his July status report, which suggests that he in fact knows that a signature is required on court filings but is purposely avoiding placing his signature on the operative submissions lest he be held to the ethical standards imposed by Rule 11 and the professional standards of conduct imposed on attorneys. *Compare* Am. Compl. and Pls.' Opp'n *with* Pls.' Status Report.

Further, as the Defendants point out, McIntyre has failed to establish standing to bring Count III on his own behalf. To the extent McIntyre brings the claim on behalf of the "number of . . . individuals" that have asked for his help at the Embassy in Addis Ababa, *see* Am. Compl. ¶ 50, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975).

---

[7]   Nor, for that matter, did any of the *pro se* Plaintiffs, which alone could be enough to strike the Plaintiffs' filings. *See* Fed. R. Civ. P. 11(a).

McIntyre's allegations in Count III—that he has been unable to "employ his services in the processes before the Embassy"—fare no better. Am. Compl. ¶ 53. McIntyre alleges that he is a member of the bar of the State of Maine and of this Court, but the Amended Complaint contains no allegation that, as a Maine attorney, he is entitled to practice law before the Embassy in Ethiopia. "A lawyer may practice law only in a jurisdiction in which the lawyer is authorized to practice." M.R. Prof. Conduct 5.5 cmt. 1; *see* M.R. Prof. Conduct 5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction . . . ."). So the Amended Complaint fails to state that McIntyre even has the right to practice law in these Embassy interviews.

Even if I could infer from the allegations that McIntyre has such a right as an attorney admitted in a U.S. jurisdiction, the Plaintiffs still fail to state a claim. They allege that the Embassy's rules—such as not permitting lawyers (and Attorney McIntyre in particular) to act on behalf of visa applicants, not allowing attorneys to attend Embassy appointments with people, and not allowing counsel to engage in legal argumentation during Embassy interviews—restrict McIntyre's ability to practice his profession thereby violating due process. Am. Compl. ¶¶ 49–53. But McIntyre cites no constitutional provision guaranteeing the right to practice law in this way.

Although the "liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment," this right to engage in one's chosen profession "is nevertheless subject

to reasonable government regulation." *Conn v. Gabbert,* 526 U.S. 286, 291–92 (1999); *see Medeiros v. Vincent,* 431 F.3d 25, 32 (1st Cir. 2005) ("The right to 'make a living' is not a 'fundamental right' for . . . substantive due process purposes."), *abrogated on other grounds by Bond v. United States*, 564 U.S. 211 (2011). Further, to "rise to the level of a violation of the Fourteenth Amendment's liberty right to choose and follow one's calling," McIntyre would need to allege "a complete prohibition of the right to engage in a calling." *Id.* at 292. His allegations fall far short of that and thus fail to allege a constitutional violation. Nor has McIntyre pointed to any case law that would support his contention that the limited restrictions that affect his ability to represent visa-seekers in certain appointments before the Embassy in Ethiopia rise to the level of a due process deprivation. *See, e.g.*, *Brisson v. City of New Bedford*, No. Civ.A.03-12249-DPW, 2005 WL 2862227, at *4–5 (D. Mass. Oct. 31, 2005) (pointing to lack of contrary authority in finding that attorney plaintiff failed to establish a right-to-practice constitutional violation based on the defendants preventing the plaintiff from meeting with a client in jail). Accordingly, Count III is dismissed.

## IV.  **Count IV – Attorney McIntyre's First Amendment Claims**

In Count IV of the Amended Complaint, McIntyre alleges that the Embassy denied him the opportunity to distribute handbills to employees at the Embassy's main entrance. He "seek[s] a court's determination that his right to hand bill was a permissible exercise of his rights of speech and petition with which the Embassy could not lawfully interfere" and asks that I order "[t]hat the Embassy refrain from interfering with persons distributing handbills at its entrance." Am. Compl. ¶ 59 & Req. for Relief D. The Defendants argue that the Plaintiffs fail to state a claim in

Count IV because the Amended Complaint "does not offer any specifics as to what the handbill says, where Plaintiff McIntyre was physically located, or when he attempted to distribute handbills." Defs.' Mot. 18. The Government points out that because there is no allegation of any content-based restriction, the United States would be within its rights to "preserve the property under its control for the use to which it is lawfully dedicated." Defs.' Mot. 19 (quoting *Adderley v. Florida*, 385 U.S. 39, 47 (1966)). The Plaintiffs in their Opposition attempt to fill in the missing factual elements. They provide a copy of the handbills and details as to where Plaintiff McIntyre was when he was distributing handbills. Pls.' Opp'n 10.

I agree with the Defendants that Count IV is devoid of the information needed to evaluate whether McIntyre states a valid First Amendment claim. Such an analysis involves three steps and requires that I: (1) determine whether McIntyre's claim involves speech protected by the First Amendment; (2) identify the nature of the forum; and (3) evaluate whether the rationale for exclusion satisfies the applicable standard for that type of forum. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The right to speak and the right to petition are seen as "cognate rights," and both advance personal expression. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011) (citation omitted). A petition, however, "conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." *Id.* at 388–89.

Here, as to the first step, even without reference to the handbills submitted as an exhibit to the Plaintiffs' Opposition, I can infer from the allegations in the

Amended Complaint that McIntyre's handbills pertained to the concerns he has about the Embassy's treatment of visa applicants. *See* Am. Compl. ¶ 55. That is protected speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs . . . ." (internal quotations omitted)).

As to the remainder of the analysis, however, the Amended Complaint lacks allegations sufficient to state a claim. The Amended Complaint alleges that McIntyre was approaching the entrance of the Embassy and "was forcibly removed from Embassy grounds by four uniformed members of the Ethiopian Federal Military Police whom Embassy personnel had summoned and instructed to remove him." Am. Compl. ¶ 57; *see also* Am. Compl. ¶¶ 56–59. But this allegation has been undercut by clarification in the Plaintiffs' Opposition that the handbilling activity did <u>not</u> take place on the Embassy grounds or property controlled by the U.S. Government.[8] Given this clarification, I fail to see how the area in which McIntyre attempted to distribute handbills could be a traditional public forum, a designated public forum, or a limited

---

[8]    The Plaintiffs' Opposition states:
    Here there is no reason to presume speech activity occurred on government property. It took place outside the Embassy, at its entrance. In Ethiopia, the government of Ethiopia owns that property. 'All land in Ethiopia is administered by the government and private ownership does not exist.' Ethiopia – United States Department of State. We may assume that the area in question is not even controlled by the U.S. Government since the Embassy relied on the Ethiopian federal military to carry out its ban.
Pls.' Opp'n 10 n.20.
    The contradiction between the Amended Complaint and the Plaintiffs' opposition, neither of which were signed by Attorney McIntyre, underscores the importance of having attorneys sign complaints and pleadings thereby making them subject to the sanctions of Rule 11.

public forum subject to First Amendment analysis. *See McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79, 90–91 (D. Me. 2022) (describing different fora). Plaintiff McIntyre offers no authority that would allow me to conclude that a United States citizen enjoys the protections of the First Amendment on a sidewalk in Addis Ababa, Ethiopia, much less any authority that would allow me to remedy a violation of any such right. Accordingly, Count IV is also dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motion to dismiss (ECF No. 22).


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 11th day of January, 2024.